## UNITED STATES

### v.

**Private (E–2) David B. GROCE, 291–50–0672, US Army, Company A, 3d Battalion, 7th Infantry, 197th Infantry Brigade, Fort Benning, Georgia.**

### SPCM 10982.

U. S. Army Court of Military Review.

Sentence Adjudged 1 Oct. 1974.

Decided 30 April 1976.

Appellate Counsel for the Accused: CPT John M. Nolan, JAGC; CPT James E. Heath, JAGC; CPT Michael R. Caryl, JAGC; MAJ Richard J. Goddard, JAGC; LTC James Kucera, JAGC.

Appellate Counsel for the United States: CPT Jonathan D. Glidden, JAGC; CPT John T. Erck, JAGC; MAJ Steven M. Wer-

ner, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

### OPINION OF THE COURT

BAILEY, Senior Judge:

Upon trial by special court-martial with members, the appellant was convicted, contrary to his pleas, of two specifications of failure to repair (Charge I) and assault with intent to inflict grievous bodily harm (Charge II), in violation of Articles 86 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 928, respectively. He was sentenced to be discharged from the service with a bad-conduct discharge, to forfeit $200.00 per month for one month, and to be reduced to the grade of Private E–1. The convening authority disapproved the finding of guilty of Specification 2 of Charge I, but otherwise approved the findings of guilty and the sentence.

Among several errors initially assigned, appellate defense counsel asserted, that a court member slept during instructions on findings and was therefore unable to perform his duty as an attentive and informed trier of fact. This complaint stemmed from the following excerpt from the defense's copy of the record of trial:

"MJ: . . . You are advised that if the accused is, after provoking or engaging in this fight—would one of you nudge Colonel Rabin there. (Lieutenant Colonel Carlson nudged Lieutenant Colonel Rabin to wake him up)."

█ Pertinent here, the Government in its reply stated that there is no statement in the original record of trial that Lieutenant Colonel Rabin was awakened, or needed to be. This facet of the Government's reply apparently caused appellate defense counsel to further examine and compare their copy

of the record with the original record of trial. This course of action precipitated the filing of the following supplemental assignments of error:

### I

THE MILITARY JUDGE IMPROPERLY DIRECTED CHANGES TO BE MADE IN THE RECORD OF TRIAL AFTER AUTHENTICATION AND, THUS, ATTEMPTED TO DEPRIVE THE APPELLANT OF INFORMED APPELLATE REVIEW AS TO THE ATTENTIVENESS OF THE COURT.

### II

THE MILITARY JUDGE AUTHENTICATED TWO SUBSTANTIALLY DIFFERENT RECORDS OF TRIAL, AND, AS A RESULT, NO TRUE REPRESENTATION OF WHAT OCCURRED AT TRIAL EXISTS.

Appellate defense counsel have filed several appellate exhibits having some bearing on the indicated errors. These include affidavits from the trial defense counsel and the court reporter, the authentication sheet[1] and several pages (11) from their copy of the record of trial.[2]

In his affidavit, the trial defense counsel, in part, states:

". . . I observed Lieutenant Colonel Ronald J. Rabin, a court member, to appear to be asleep. I arrived at that conclusion after observing LTC Rabin for five to eight minutes shift his sitting position continuously. Finally he assumed a posture with his head resting in his hands, his body in a relaxed position and his eyes closed. The Military Judge, while giving instructions on findings, directed that someone 'nudge Lieutenant Colonel Rabin.' When the record was prepared, it reflected at Page 135 that

1. This sheet (Defense Appellate Exhibit 15) indicates that the record of trial was authenticated by the military judge on 19 November 1974 and examined and signed by the trial defense counsel on 6 December 1974. Similar signatures and dates appear on the authentication sheet appended to the original record of trial.

2. A comparison of the 11 pages from the defense's copy of the record of trial with identically numbered pages in the original record of trial reveals that, in each instance, the entire page was retyped. In the process, typographical errors were corrected, a parenthetical entry by the court reporter was deleted, and in several instances words and sentence structures were changed without materially changing the thought intended to be expressed.

LTC Charles W. Carlson 'nudged LTC Rabin to wake him up.' I signed that record on 6 December 1974. At that time included therein at Page 135 was the fact that LTC Carlson 'nudged LTC Rabin to wake him up.' Any change to the record of trial which does not contain the last mentioned statement was made without my knowledge or approval."

In his affidavit, the court reporter, in part, states:

". . . In the afternoon during the military judge's instructions on findings, Lieutenant Colonel Rabin was slouched in his chair with his head resting on his hand and eyes shut. The military judge then asked for one of the court members to nudge LTC Rabin. LTC Carlson, who was sitting at LTC Rabin's left, nudged him. He appeared very attentive after that. In the record of trial, I made a notation which read, '. . . (LTC Carlson nudged LTC Rabin to wake him up)'. The military judge, when reading the record, told me to delete the words, 'to wake him up', as I am not in a position to say that he was sleeping. I agreed with him on that and deleted the words, 'to wake him up:, [sic] along with making the other usual corrections in the record of trial. At the time when I was making the corrections, one of the copies of the record of trial was in the hands of the lawyer who was doing the review. I did not get a hold of that copy, and therefore failed to make the corrections in that copy. The original and its three other copies were corrected appropriately."

Appellate defense counsel contend, that the military judge's action in directing changes be made in the already authenticated record of trial denied trial defense counsel the opportunity of objecting to or challenging those changes. Moreover, they assert, that action would have the effect of depriving the appellant of an informed review of the behavior of the court members. Such action, their argument continues, is improper and constitutes an affront to the integrity of the military justice system, citing, inter alia, United States v. Harris, 21 U.S.C.M.A. 123, 44 C.M.R. 177 (1971).

In the military, as in the civilian setting, it is well established "that the records and judgments of the trial court import absolute verity and may not, in the absence of a charge of fraud, be challenged." *United States v. Solak,* 12 U.S.C.M.A. 440, 28 C.M.R. 6 (1959); *United States v. Albright,* 9 U.S.C.M.A. 628, 26 C.M.R. 408 (1958); *United States v. Galloway,* 2 U.S.C.M.A. 433, 9 C.M.R. 63 (1953).

In *United States v. Harris, supra,* upon which the defense heavily rely, the Court of Military Appeals was concerned with an alteration of the authenticated transcript of the accused's trial after completion of the staff judge advocate's post-trial review. There the court majority (Senior Judge Ferguson concurring in part and dissenting in part), held that the unauthorized addition of matter to an authenticated transcript is not reversible error if the matter improperly added is harmless to the accused. The late Chief Judge Quinn, speaking for the majority made, among others, two significant observations:

"An illegal action affecting the trial can pose so great a threat to the integrity of the judicial system or to the values sought to be protected by a procedural requirement as to justify invalidation of the entire proceedings without regard to whether the illegal action prejudiced the accused. . . ." (21 U.S.C.M.A. at 124, 44 C.M.R. at 178).

\*     \*     \*     \*     \*     \*

"In the specific area of the verity of an authenticated transcript of trial, we have, from the beginning, weighed the matter from the standpoint of actual harm to the accused. *United States v. Nelson,* 3 U.S.C.M.A. 482, 13 C.M.R. 38 (1953); *United States v. Belarge,* 19 U.S.C.M.A. 91, 41 C.M.R. 91 (1969). . . ." (21 U.S.C.M.A. at 125, 44 C.M.R. at 179).

Of some applicability here is what was said in *United States v. Nelson,* 3 U.S.C.M.A. 482, 13 C.M.R. 38 (1953):

"It is not reasonably possible to set out the factors which can, in all instances, be used to test whether a record, which has

some slight omissions, prejudiced an accused's right on appeal. Generally speaking, if the record is sufficiently complete to permit reviewing agencies to determine with reasonable certainty the substance and sense of the question, answer, or argument, then prejudice is not present. For instance, if the content of an answer by a witness is clearly discernible from the portions of the testimony transcribed, any appellate court can determine its substance regardless of a word or phrase being omitted. When the omissions are so unimportant that the thought being expressed is readily ascertainable, then the record can be said to be verbatim. *Furthermore, the purpose of an appeal is to obtain a decision of the appellate tribunal on error claimed to have been committed in the forums below. If the transcript is sufficiently complete to present all material evidence bearing on all issues, minimal standards have been met and we will not reverse. . . .*" (3 U.S.C.M.A. at 486, 13 C.M.R. at 42) (Emphasis added.)

In the instant case it seems clear that, while instructing the court members on findings, the military judge stopped and asked one of the members to nudge Lieutenant Colonel Rabin, another member of the court. As a result, there appears to be no dispute that the record of trial, as initially prepared, included a parenthetical entry by the court reporter which stated, in part, "to wake him up." This phrase, we note, implicitedly represented a conclusion on the part of the court reporter that the court member involved was asleep, but was not a fact found by the military judge, or otherwise established for the record. We further note, as represented by the court reporter in his affidavit, and as apparently conceded by appellate defense counsel, that the deletion of this phrase was directed by the military judge for the reason that, it reflected a physical status of the court member which the court reporter was not competent to judge. Such action on the part of the military judge was consistent with his responsibility for the accuracy and ultimate authentication of the record of trial. Arti-

cle 54(a), Uniform Code of Military Justice. The fact that the trial defense counsel, under local practices and procedures, examined a copy of the record of trial which, inadvertently, was forwarded without being corrected, does not detract from the verity of the original transcript of the trial proceedings. We find no basis for concluding that the changes were made after authentication or that they were made for the purpose of depriving the appellant of an informed appellate review. Accordingly, the errors asserted in the supplemental assignment of errors are deemed to be without merit.

█ Examination of the record discloses that, although the trial defense counsel indicates in his affidavit that he observed Lieutenant Colonel Rabin "appear to be asleep," the record is barren of any attempt on his part to definitively establish for the record the exact nature and extent of his conduct. We are not unmindful of the view which has been expressed that "a defense counsel should not be compelled to imperil his case in the minds of the jury by objecting for the purpose of protecting his rights on appeal." *United States v. Smith*, 6 U.S. C.M.A. 521, 20 C.M.R. 237 (1955); *United States v. Massa*, 49 C.M.R. 586 (A.C.M.R. 1974). However, there are established procedures, if timely invoked, which would accommodate consideration of remedial proposals in an atmosphere that would not imperil the defense's case in the minds of the fact finders. In other words, if, in the opinion of the trial defense counsel, the court member's conduct required corrective action, he could have requested an out-of-court hearing for the purpose of moving for a mistrial, challenging the court member, or requesting reiteration of the instructions. In light of the foregoing, we are urged by the Government to invoke waiver and reject the initially assigned error (ERROR I), which asserts, in substance, that reversal is required because a court member slept during the instruction on findings.

The Government's waiver proposal has persuasive merit. The trial defense counsel's failure to complain or to seek remedial

action of any form during the trial would accommodate an inference that he, at the material time, did not view the court member's action or inaction as being so egregious as to prejudice the interests of his client. That the court member involved may have been inattentive to some extent can be inferred from the military judge's action in directing that he, the court member, be nudged. However, the military judge's action in this respect, standing alone, would not warrant our concluding that the court member was in fact asleep, or otherwise inattentive to the extent that he missed any substantial portion of the proceedings. Even assuming that the court member's posture, when nudged, was one of sleep, closed eyes and lowered head, this, it has been held, is as consistent with concentration as with sleep. *United States v. Conway*, 33 C.M.R. 903 (A.F.B.R.1963).

In the military not every act of misconduct by a court member justifies the reversal of a conviction. *United States v. Carver*, 6 U.S.C.M.A. 258, 19 C.M.R. 384 (1955); *United States v. Adamiak*, 4 U.S.C.M.A. 412, 15 C.M.R. 412 (1954). Similarly, in the civilian setting a party claiming error on this score must affirmatively show inattention and further demonstrate that as a result of such inattention a juror failed to follow some important or essential part of the proceedings.[3] Further, in the absence of seasonable objection raised at the trial level, a party may not complain of misconduct on the part of a juror affecting him, unless the circumstances were such that there was no opportunity to object.[4]

In addition to the foregoing, it is to be noted that the trial was conducted under the inspection and control of the military judge. Therefore, if sleeping or any other form of inattentiveness disqualified any member of the court from considering the case properly, it would have been his duty to have, *sua sponte*, declared a mistrial. That he did not do so we must, in the absence of proof, come to the contrary conclusion, and hold that the irregularity complained of was so slight that it did not redound to the prejudice of the appellant. We further find that the appellant was not harmed by the deletion of the phrase "to wake him up" from the record of trial. Having so found, reversal of the findings of guilty and the sentence, as urged by appellate defense counsel, is not warranted. *United States v. Harris, supra.*

The remaining assignments of error have been considered and found to be without substantial merit.

The findings of guilty and the sentence are affirmed.

Judge DeFORD concurs.

Judge COOK absent.

*Welch v. United States*, 10 Cir., 371 F.2d 287 (1966).

---

3. 75 Am.Jur.2d, Trial § 933.

4. 75 Am.Jur.2d, Trial § 937. *See Early v. United States*, D.C., 309 F.Supp. 421 (1969) and