UNITED STATES, Appellee

v.

EDWARD L. GOPAULSINGH, Airman Third Class,
U. S. Air Force, Appellant

5 USCMA 772, 19 CMR 68

COL A. W. Tolen, USAF, and 1ST LT Robert Burns, USAF, for Appellant.
LT COL Emanuel Lewis, USAF, and MAJ Roger H. Miller, USAF, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was tried and convicted by general court-martial in Korea of five specifications of communicating obscene language by telephone to female employees of the Air Force on duty in that area. His sentence includes a bad-conduct discharge. We granted review to consider the applicability of the Federal Communications Act, 47 USC § 605.

Here, as in United States v. Noce, 5 USCMA 715, 19 CMR 11, the accused contests the admissibility of certain evidence and of a pretrial statement. Both of these, he maintains, were obtained as a result of the interception of a telephone call made by him. After several complaints regarding objectionable telephone calls to females were received, a system of telephone monitoring was instituted. Eventually a monitoring operator, stationed at the Air Force switchboard at the K-2 Air Base in Korea, intercepted a call originating from the public telephone booth in the passenger terminal of the base. The receiving telephone was located in a service club on the base. As a result of the monitored call, the accused was apprehended. He was taken to the Air Police office, advised of his rights under Article 31, Uniform Code of Military Justice, 50 USC § 602, and interrogated. In the course of the interrogation, the accused executed a signed statement containing incriminating admissions. This statement was admitted in evidence at the trial.

In United States v. Noce, supra, we concluded that Congress intended not to include within the prohibition of the wire tap provisions of Section 605 of the Communications Act, a self-contained, exclusively operated, maintained, and controlled military communication system. In this case there is sufficient evidence to support the conclusion that the telephone system used by the accused was exclusively military. Hence, the case is clearly within our decision in the Noce case. More than that, however, it seems to us that Section 605 has no application whatever to a telephone communication made and completed within the boundaries of a foreign country.

Section 152 of the Communications Act expressly limits applicability of the entire chapter, which includes the wire tap section, to communications which originate or are received within designated geographic areas. In pertinent part, the section read as follows:

"The provisions of this chapter shall apply to all interstate and foreign communication by wire or radio . . . which originates and/or is received within the United States. . . ."

For the purposes of the Communications Act, the "United States" means the continental area and United States territories and possessions, except the Canal Zone. Section 153(g).

The telephone communication here was neither originated nor received within the area described by the Communications Act. Consequently, there is no statutory restraint on interception. In reaching this conclusion we have not overlooked the distinction between the regulatory powers of the Federal Communications Commission set out in the first part of the Act and the prohibitions of Section 605. In commenting on the distinction in Weiss v. United States, 308 US 321, 84 L ed 298, 60 S Ct 269, the Supreme Court

**773**

did not exclude reference to the first part of the Act for the purpose of determining the applicability of Section 605 to specific systems of communication. Certainly its decision in On Lee v. United States, 343 US 747, 96 L ed 1270, 72 S Ct 967, rejects any such restriction in the ascertainment of the Congressional intent in regard to the Act. See also: Casey v. United States, 191 F2d 1 (CA9th Cir 1951), reversed on other grounds 343 US 808, 96 L ed 1317, 72 S Ct 999.

As we pointed out in the *Noce* case, there is no constitutional prohibition against the use of wire tap evidence in a Federal criminal proceedings. Olmstead v. United States, 277 US 438, 72 L ed 944, 48 S Ct 564. Thus, it was not error to admit evidence of the monitored telephone call. And since it was not a result of illegally obtained evidence, the accused's pretrial statement was also properly admitted.

The decision of the board of review is affirmed.

BROSMAN, Judge (concurring):

I agree with the author of the principal opinion in his disposition of this case.

Like him, I feel sure that Section 605 has no application to telephone calls entered and completed outside the United States. I am strengthened in this conclusion by the view of the Supreme Court—expressed long ago in the celebrated Bowman case—to the general effect that it will be presumed that most Federal statutes are inoperative outside the nation's territorial jurisdiction. See United States v. Bowman, 260 US 94, 67 L ed 149, 43 S Ct 39.

And, for whatever it is worth in the present connection, I would be inclined to follow this approach in interpreting with respect to wire tapping the reference in Article 134 of the Uniform Code to "crimes and offenses not capital." Since this division of the legislation applies only to misconduct violative of *Federal* law, I would hesitate to say that an instance of wire tapping wholly per-

**774**

formed within a foreign country is punishable by court-martial as a violation of the mentioned portion of Article 134. Cf. Manual for Courts-Martial, United States, 1951, paragraph 213c(1) and (2).

LATIMER, Judge (concurring in the result):

I concur in the result.

My views on the law of intercepted communications are set forth in United States v. Noce, 5 USCMA 715, 19 CMR 11, this day decided, and they will not be repeated.

I concur in the principal opinion in this instance because neither the Code, Manual, nor Federal statutes apply. The Supreme Court in Olmstead v. United States, 277 US 438, 72 L ed 944, 48 S Ct 564, held that wire tapping did not abridge any Constitutional right or privilege, and all subsequent decisions have dealt with illegal telephonic interceptions as being violations of the Communications Act. In connection with that Act, I believe, when properly construed, it evinces a Congressional intent to limit applicability to messages either confined to areas where Federal law applies or to foreign messages which originate in or are received in those areas. Statutory provisions are to be fairly construed according to the Congressional intent expressed in the enactment, and I find no words in the Communications Act which indicate that messages which do not leave foreign soil are intended to be covered.

In United States v. DeLeo, 5 USCMA 148, 17 CMR 148, I contended that when an accused is tried before a court-martial, the provisions of the Code and the Manual govern regardless of the locale of the criminal violation, and I do not retreat from that position. But, when I interpret their provisions which have to do with this violation, I find the evidence under attack to be admissible. It is to be remembered that peculiar to this evidentiary field, the admissibility of the testimony is determined by the fate it would meet in a Federal district court. If, as all members of the Court agree, the Federal

Communications Act has no application in Korea, then there is no Congressional or judicial proscription against the use of this testimony. Assuming, arguendo, that this accused could be tried by a Federal district court upon his return to the United States, I believe the questioned testimony would be admissible in evidence. For that reason, I join with my associates in affirming the findings and sentence.