**UNITED STATES**

v.

**Staff Sergeant James E. PULLEN, FR381–86–5335, United States Air Force.**

**ACM 30792.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 4 May 1993.

Decided 10 March 1995.

Appellate Counsel for Appellant: Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, Captain Joel R. Reifman, Captain Eric N. Eklund, and Captain Robert K. Coit.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Colonel Thomas E. Schlegel, and Colonel William T. Hoffman.

Before HEIMBURG, BECKER, and STUCKY, Appellate Military Judges.

STUCKY, Judge:

Staff Sergeant James E. Pullen was convicted by a general court-martial with members and pursuant to his pleas of guilty, of one specification of oral sodomy with a child under 16, in violation of Article 125, UCJM, 10 U.S.C.A. § 925; one specification of knowing possession of 3 or more items depicting minors engaged in sexually explicit conduct, in violation of Article 134 [1], UCMJ; one specification of indecent acts with a child under 16, in violation of Article 134, UCMJ; and three specifications of attempted indecent acts with a child under 16, in violation of Article 80, UCMJ. He was sentenced to a bad-conduct discharge, 7 years confinement, and reduction to E–1. The convening authority approved the sentence as adjudged.

I

The appellant was stationed at Clark Air Base, Philippines, in 1991. He lived in base housing with his wife, a Filipino national, and her four minor children, whom he legally adopted. The appellant and his family were evacuated from Clark AB as a result of the eruption of Mt. Pinatubo. In August 1991, a special agent of the Air Force Office of Special Investigations inspected the appellant's household goods prior to their packing and shipment to the U.S. In the course of this routine inspection, the agent discovered more than three sexually-explicit magazines, books, videos, and posters depicting nude female children under the age of 18. Also discovered were a sexually-explicit cartoon video depicting children in sadomasochistic situations and pictures of a nudist colony with nude children and adults.

The appellant and his family, after the evacuation, were transferred to Kirtland AFB, New Mexico, where they also lived in base housing. In July 1992, the appellant's

quarters were searched, and photographs of nude female children under the age of 18 were found, together with a video made by the appellant, evidently at an air base in Japan, in which he followed young girls around, zooming in on their breasts and buttocks. Another video found there was of the entrance to a women's bathroom by a swimming pool, and consisted of zoom shots of young girls entering and exiting.

II

■ The appellant's first contention of error is that the statute under which he was convicted in specification 1 of Charge II, 18 U.S.C. § 2252(a)(4)(A), is facially unconstitutional. He relies on *United States v. X–Citement Video, Inc.,* 982 F.2d 1285 (9th Cir.1992), in which a panel of the United States Court of Appeals for the Ninth Circuit held that section 2252 violated the First Amendment because it did not contain a *scienter* requirement as to the age of the minors depicted in the matter in question. Unfortunately for the appellant, this issue has since been determined adversely to this position by the Supreme Court, which reversed the Ninth Circuit decision and held that section 2252 did indeed contain a *scienter* requirement as to age and was therefore not constitutionally infirm. *United States v. X–Citement Video, Inc.,* — U.S. —, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). This argument is therefore without merit.

III

The appellant's second contention is that so much of the conviction of specification 1 of Charge II as relates to the possession of sexually-explicit material in the Philippines should be set aside, because 18 U.S.C. § 2252(a)(4)(A), the particular statute set out above, does not apply extraterritorially. The appellant first states the general proposition that federal statutes do not apply extraterritorially unless Congress intends otherwise or the statutory scheme necessarily requires it. *See, e.g., United States v. Gopaulsingh,* 5 U.S.C.M.A. 772, 19 C.M.R. 68 (1955). He then argues that, as a matter of statutory

---

1. The underlying criminal statute was 18 U.S.C. § 2252(a)(4)(A), imported into Article 134 through its "crimes and offenses not capital" clause.

construction, section 2252(a)(4)(A) evinces no such intent, because, unlike section 2251(a), which has been held to apply extraterritorially,[2] it contains no language requiring knowing transport in interstate or foreign commerce or in the mail. Rather, it simply proscribes knowing possession.

The military judge relied upon *United States v. Thomas,* 893 F.2d 1066 (9th Cir.), *cert. denied,* 498 U.S. 826, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990), as authority for the proposition that section 2252(a) likewise applies extraterritorially. We, however, agree with the appellant that that decision's holding is limited to section 2251(a), which is not the section under which the appellant was convicted. While there is language in the opinion about a "comprehensive statutory scheme," it is essentially a dictum. The holding of the *Thomas* case is limited to section 2251(a).

■■■ This does not, however, end the inquiry. The relevant statute, section 2252(a)(4)(A), proscribes knowing possession of sexually-explicit matter "in the special maritime or territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the Government of the United States...." Congress possesses undoubted power, subject only to the constraints of the Constitution, to define criminal offenses against the United States and prescribe the punishments therefor; the Constitution interposes no bar to the extraterritorial application of criminal law. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Blackmer v. United States,* 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932); *United States v. Hudson and Goodwin,* 11 U.S. (7 Cr.) 32, 3 L.Ed. 259 (1812). International law recognizes the right of a country to apply its statutes to the extraterritorial acts of its citizens and nationals. *Thomas, supra; United States v. King,* 552 F.2d 833 (9th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

■■ In *United States v. Wilmot,* 11 U.S.C.M.A. 698, 29 C.M.R. 514, 1960 WL 4548 (1960), the Court of Military Appeals held that the Narcotics Control Act, which applied by its terms to "territory under the control or jurisdiction" of the United States, was applicable to Yokota Air Base in Japan, although the United States did not exercise sovereignty thereon. The language in section 2252(a)(4)(A) "... on any land or building owned by, leased to, or otherwise used by or under the control of the Government of the United States ...", is by far broader than the language of the Narcotics Control Act. Given Congress' undoubted power to legislate in the area, we regard the language of the statute as *a fortiori* from *Wilmot,* and as a clear expression of Congress' intent to apply section 2252(a)(4)(A) to military installations outside the United States, which are certainly "owned by, leased to, or otherwise used by" the United States, whatever the actual degree of control it exercises pursuant to international agreement. This being the case, the appellant's second argument must be rejected.

## IV

The appellant's third assignment of error is that his plea of guilty with respect to specification 1 of Charge II was improvident because the "visual depictions" he possessed, with one exception, were not minors "engaging in sexually explicit conduct," specifically "lascivious exhibition of the genitals", as required by section 2256 of the statute. While conceding that Prosecution Exhibit 1L is a "lascivious exhibition of the genitals", the appellant asserts that none of the other exhibits contains such a visual depiction; that most of them do not exhibit the genitals at all; and that, in those that do, the exhibition is not "lascivious." This assertion is puzzling. Prosecution Exhibits 1F, 1H, 1I, 1K, and 1L clearly exhibit the female genitalia in positions of frontal nudity,[3] although many are taken in a soft focus which somewhat blurs detail. Prosecution Exhibits 1A, 1B,

---

2. *United States v. Thomas,* 893 F.2d 1066 (9th Cir.), *cert. denied,* 498 U.S. 826, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990); *United States v. Moncini,* 882 F.2d 401 (9th Cir.1989).

3. Exhibit 1L is the one which the appellant concedes is lascivious.

and 1E are photographs of young girls in provocative poses of nudity or seminudity; in each of these, the labia are covered by a black or white airbrushed spot or rectangle, but everything else is exposed.

The accepted standard for determining whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area" was set out in *United States v. Dost*:[4]

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

With one caveat—that the conduct involved or implied is not the child's characteristic, but rather a function of the exhibition that the photographer sets up for himself and other viewers—this test has been widely adopted.[5] The military judge employed it in informing the appellant of the elements of the offense in the *Care*[6] inquiry in this case.

 It is settled that a guilty plea will not be found improvident unless the record of trial shows a substantial basis in law and fact for rejecting it. *United States v. Prater*, 32 M.J. 433 (C.M.A.1991); *United States v. Logan*, 22 U.S.C.M.A. 349, 47 C.M.R. 1, 1973 WL 14641 (1973). The military judge carefully elicited from the appellant that he knowingly possessed the material in question; that he knew the persons depicted were minors; that the depictions constituted lascivious exhibitions of the genitals or pubic area, or other sexually-explicit conduct, within the meaning of the statute; and that he fully understood the elements of the offense. The stipulation of fact entered into evidence recited the same facts. Absolutely nothing emerged during the *Care* inquiry that could be construed as even constituting a possibility of a defense, let alone a substantial basis for one.[7]

The findings and sentence are

AFFIRMED.

Senior Judge HEIMBURG and Judge BECKER concur.

---

4.  636 F.Supp. 828 (S.D.Cal.1986), *aff'd. sub. nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir.1987), *cert. denied*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987).

5.  *United States v. Wiegand, supra.; United States v. Jordan*, 890 F.2d 247 (10th Cir.1989); *United States v. Villard*, 885 F.2d 117 (3rd Cir.1989); *United States v. Nolan*, 818 F.2d 1015 (1st Cir. 1987).

6.  *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969).

7.  Appellant now argues that the females in Prosecution Exhibits 2 are not minors, although he admitted in the *Care* inquiry and in the stipulation of fact that they were. This argument is without merit. *Nolan, supra.* n. 5, at 1018–1020.