**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Staff Sergeant JEREMIAH L. THOMPSON**
**United States Air Force**

**ACM 38269**

**17 June 2014**

Sentence adjudged 29 November 2012 by GCM convened at Joint Base Lewis–McChord, McChord Field, Washington. Military Judge: Martin T. Mitchell (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Nicholas D. Carter.

Appellate Counsel for the United States: Colonel Don M. Christensen; Major Daniel J. Breen; Major John M. Simms; and Gerald R. Bruce, Esquire.

Before

MARKSTEINER, HECKER, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

WEBER, Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of three specifications of knowingly and wrongfully possessing one or more visual depictions of minors engaging in sexually explicit conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was also convicted of one specification of the knowing and wrongful receipt of such material, also in violation of Article 134, UCMJ. The adjudged and approved sentence consisted of a dishonorable discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to E-1.

The appellant raises four issues for our consideration: (1) whether his convictions for knowingly and wrongfully possessing such material are factually and legally sufficient; (2) whether his conviction for knowingly and wrongfully receiving such material is factually and legally sufficient; (3) whether his convictions must be set aside because several depictions offered in support of the specifications are constitutionally protected, and it is impossible to determine whether such constitutionally-protected depictions contributed to the general verdict of guilt; and (4) whether the military judge erred by admitting a peer-to-peer report that listed file names that were not found on the appellant's computer. We find no error materially prejudicial to a substantial right of the appellant and affirm.

*Background*

The Air Force Office of Special Investigations (AFOSI) learned from a civilian law enforcement agency in 2011 that the appellant had, in 2007, subscribed to a website suspected of containing child pornography. AFOSI agents interviewed the appellant after advising him of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b). The appellant waived his rights and provided a statement to investigators. He told agents he had an interest in "young and developing" girls, and later defined his age of interest as ranging from 13 to 16 years old. He admitted to subscribing to the website in question for one month, during which he repeatedly viewed depictions of underage girls and would masturbate while viewing these depictions. He stated that he did not renew his membership to the site after a month, but instead conducted internet searches and visited another website that displayed images of children and families in stages of undress. Again, he masturbated while viewing these images. The appellant admitted to a "dark, sick attraction to the developing woman" and admitted that he "definitely" viewed nude images and videos of girls under the age of 18.

Despite these admissions, the appellant repeatedly insisted his interest was restricted to nudist and naturalist images or videos of girls in their teenage years. He stated that these websites depicting nudist and naturalist material did not depict explicit sexual activity. He also stated that while searching for such material, he would sometimes find other sites that displayed younger children engaged in explicit sexual activity. When he came across such websites, he stated he would "turn the other way." He denied intentionally looking at material that depicted girls who were not yet beginning to develop or who were involved in explicit sexual activity.

AFOSI agents seized several media devices the appellant owned, including two laptop computers and a desktop computer. A forensic analysis of these devices revealed numerous images depicting minors engaged in sexually explicit conduct, along with a smaller number of videos depicting such conduct. The Government charged the appellant with knowingly and wrongfully possessing 216 such images and videos on six items of computer hardware. The military judge convicted the appellant of three of the

charges that encompassed the appellant's two laptop computers and his desktop computer. The military judge also convicted the appellant of knowingly receiving visual depictions of minors engaging in sexually explicit conduct; this specification was not specific to any particular piece of computer hardware.

*Factual and Legal Sufficiency*

The appellant contends his convictions for possession and receipt of visual depictions of minors engaging in sexually explicit conduct are factually and legally insufficient. We address his two alleged errors involving the possession and receipt specifications together. As to the possession specifications, the appellant alleges his convictions should not stand because the images and videos were found exclusively in areas of the hard drives inaccessible to the appellant, and because the evidence does not demonstrate he knew of the existence of the files on his computers. As to the receipt specification, the appellant alleges the evidence did not demonstrate he viewed or knowingly received any of the material found on his computers.

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

"The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citation and internal quotation marks omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The elements of the specifications alleging the appellant wrongfully possessed visual depictions of minors engaged in sexually explicit conduct are as follows:

(1) That at or near Papa Air Base, Hungary, between on or about 1 August 2007 and on or about various dates in mid-2011,[1] the appellant knowingly and wrongfully possessed one or more visual depictions of minors engaging in sexually explicit conduct; and

(2) That, under the circumstances, the appellant's conduct was prejudicial to good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.[2]

*Manual for Courts-Martial*, Part IV, ¶ 60.b. (2008 ed.).

The elements of the specification alleging that the appellant knowingly and wrongfully received visual depictions of minors engaged in sexually explicit conduct are identical to the elements for possession, except the first element requires proof that the appellant knowingly and wrongfully received such material on divers occasions between on or about 1 August 2007 and on or about 16 August 2011.

We acknowledge, as did trial counsel in his closing argument, that "the forensic evidence by itself has a lot of gaps in it." The prosecution exhibits and the testimony of a computer forensics expert establish that nearly all the charged files were found in unallocated space on the appellant's computer hard drives or through a shadow volume copy. A user would not have had access to these areas without specialized knowledge and software. In addition, the majority of the charged files consisted of "thumbnail" images that are typically placed on a user's hard drive through an internet cache without the user taking any active steps to download the images. Of the 216 charged files, the Government's computer forensics expert could only determine that one was accessed by a user of the computer; that image was several years old and was in the computer's recycle bin. Finally, the forensic review of the appellant's computer hard drives revealed no evidence a user employed any internet search terms indicative of child pornography.

Despite these gaps, we conclude the appellant's conviction is factually and legally sufficient. The forensic evidence may not have been dispositive, but it contained significant evidence of the appellant's knowing and wrongful receipt and possession of visual depictions of minors engaged in sexually explicit conduct. The fact that the appellant's computer hard drives contained such images and videos in unallocated space suggests that they were once in a logical file accessible by the user, according to the computer forensics expert's testimony. Other charged files were restored from a shadow

---

[1] Specification 1, involving the appellant's Apple MacBook Pro laptop computer, employs an end date of on or about 11 July 2011. Specification 4, involving the appellant's Gateway laptop computer, employs an end date of on or about 2 August 2011. Specification 5, involving the appellant's Hewlett-Packard desktop computer, employs an end date of on or about 16 August 2011.

[2] The Government charged the appellant in the conjunctive, meaning it needed to prove that his conduct met the terminal elements of both Clauses 1 and 2 of the General Article of Article 134, UCMJ, 10 U.S.C. § 834.

volume copy, which is a system backup of the accessible computer system at a given point in time. This means these images and videos were accessible by the appellant at the time the shadow volume copy was made. The forensic evidence also rules out the appellant's assertion that the "thumbnail" images could have been automatically cached without his knowledge when he visited legal websites. The amount, nature, and names of the files on the appellant's computer hard drives, combined with the fact that the videos and some images were not thumbnails, rule out any reasonable possibility of an accident. In addition, despite the lack of any specific internet search terms for child pornography, the forensic review of the appellant's hard drives demonstrates he visited webpages with graphic names that easily would have put him on notice that he was encountering child pornography. The appellant simply could not have located, received, and possessed such graphic materials by visiting innocent, legal websites, and he cannot claim that he did not know he was venturing into sites containing illegal material.

The appellant's confession firmly shores up any remaining gaps in the forensic evidence. When confronted by AFOSI, the appellant repeatedly denied knowledge of any reason why he might be suspected of receiving and possessing child pornography. Eventually, though, he began to haltingly admit misconduct. He admitted to subscribing to an internet "magazine" for one month that contained nude images of underage girls as young as 15 to 16 years old. He conceded that he did not know how such images "fall under you guys' laws," and stated he was looking for something "extreme" and different from adult pornography. While he first denied that he was more attracted to girls under the age of 18 than adult women, he later admitted he was "partial" to girls ranging from 13 to 16 years old. He also admitted that his desire for girls of that age was still present, and that he masturbated while viewing images and videos of underage girls on the internet magazine. Confronted again by AFOSI agents, he disclosed that he currently subscribed to a similar website that contained nude images of families, including girls under the age of 18. He repeatedly denied intentionally viewing images or videos of explicit sexual conduct involving underage girls or depictions of girls under the age of 13. However, he stated that if he encountered such files, it was in the course of trying to locate his internet magazine website, and he would navigate away from such websites. He also admitted to some degree of knowledge that images he viewed on the internet would be saved in his temporary internet files, and he excluded any possibility that other people used the computers in question. Finally, the appellant admitted that he had a "dark, sick attraction to the developing woman" and that he knew his actions were wrong and he felt bad about them.

The combination of the forensic evidence and the appellant's confession convinces us that the appellant's convictions for receipt and possession of visual depictions of minors engaged in sexually explicit conduct is factually and legally sufficient. More than 200 graphic sexual images of young children were found on the appellant's computer hard drives. The appellant also visited web pages with graphic terms associated with child pornography. All these files were at one point in accessible portions of the

appellant's computer hard drives, and even if many of them were placed there through an internet cache process, the appellant admitted to at least some knowledge that images he viewed would be saved to his computer hard drives. The appellant admitted to an attraction to underage girls and to masturbating to nude images of girls as young as 13 years old. His confession does not wholly align with the images and videos found on his computer hard drives, but we are nonetheless convinced that the forensic evidence and the appellant's confession jointly demonstrate the appellant knowingly and wrongfully received and possessed the charged files.

*General Verdict of Guilt*

The appellant next urges us to set aside his convictions because several of the charged files do not contain child pornography and are constitutionally protected. Relying primarily on *United States v. Barberi*, 71 M.J. 127 (C.A.A.F. 2012), he asserts the military judge's general verdict may not stand because it is impossible to determine whether he was convicted based in part on his receipt and possession of the constitutionally protected files.

The military justice system employs a presumption in favor of general verdicts; such verdicts will not ordinarily be set aside even if there are alternate or multiple theories of guilt. *See United States v. Rodriguez*, 66 M.J. 201, 204 (C.A.A.F. 2008). However, "[w]here a general verdict of guilt is based in part on conduct that is constitutionally protected, the Due Process Clause requires that the conviction be set aside." *Barberi*, 71 M.J. at 128 (citing *Stromberg v. California*, 283 U.S. 359, 368-70 (1931)).

The appellant's contention is that some of the charged files do not constitute "child pornography" within the definition of the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. §§ 2252A-2260. The appellant was charged with violating Clauses 1 and 2 of Article 134, UCMJ, not the CPPA. In this military judge-alone case, no instructions were required or issued to indicate whether the CPPA's definitions were to be made applicable to this case. However, the interaction between the military judge and counsel, combined with the language of the specification, convinces us that the provisions of the CPPA were employed in this case. Counsel for both sides used language from the CPPA to argue why certain files did or did not meet the definition of child pornography, and the charged language "visual depictions of minors engaged in sexually explicit conduct" mirrors the criminal prohibitions of 18 U.S.C. § 2252A. Therefore, in order for the charged images and videos to be criminal and fall outside constitutional protection, they must meet the definition of "child pornography" in the CPPA.

The CPPA defines "child pornography" as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture . . .

of sexually explicit conduct, where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8). "Sexually explicit conduct" is defined as actual or simulated sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic areas of any person. 18 U.S.C. § 2256(2). Therefore, where the depiction does not involve any of the first four defined types of sexually explicit conduct, the appellant may not be convicted unless an image or video: (1) contained an exhibition of the genitals or pubic area of any person; and (2) the exhibition was "lascivious."

To determine whether the charged images and videos in this case contained a lascivious exhibition of the genitals or pubic area, we employ the test set forth in *United States v. Dost*, 636 F.Supp. 828, 832 (S.D.Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987). This Court adopted the widely-accepted *Dost* factors in *United States v. Pullen*, 41 M.J. 886 (A.F. Ct. Crim. App. 1995). *See also United States v. Roderick*, 62 M.J. 425, 429 (C.A.A.F. 2006) (wherein our superior court applied the *Dost* factors to the military justice arena). Under this approach, if the images do not depict the genital or pubic area, we stop our analysis. If those specific areas are depicted, we apply the following factors:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Dost*, 636 F.Supp. at 832. In *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999), the court observed that "[n]udity alone does not fit this description" of the phrase "lascivious exhibition of the genitals or pubic area." Instead, "there must be an 'exhibition' of the genital area and this exhibition must be 'lascivious.'" *Id.*

The appellant contends that the following files do not meet the definition of child pornography, and therefore his conviction may not be based upon his receipt or

possession of such files:

> Charged file 105, file number 01553330.jpg
> Charged file 125, file number 00156100.jpg
> Charged file 174, file number 01400216.mpg
> Charged file 175, file number 01264297.mpg
> Charged file 176, file number 00450653.jpg
> Charged file 177, file number 00450657.jpg
> Charged file 179, file number 00450652.wmv
> Charged file 180, file number 00450655.wmv
> Charged file 181, file number 00450658.wmv
> Charged file 182, file number 00450660.wmv
> Charged file 206, file number 00300637.jpg
> Charged file 209, file number 00300954.jpg
> Charged file 212, file number 00341174.jpg
> Charged file 213, file number 00341175.jpg
> Charged file 214, file number 00341825.jpg

We have reviewed all the charged depictions contained in Prosecution Exhibit 25. We agree with the appellant that the following depictions do not meet the definition of "child pornography," and therefore are constitutionally protected: charged files 174, 175, 182, and 214. In addition to the files noted by the appellant, we also find the following depictions do not meet the definition of "child pornography": charged files 83 (file number 00154440.jpg), 99 (file number 00154673.jpg), 142 (file number 00264871.jpg), and 216 (file number 00317647.mpg).[3] We disagree with the appellant concerning the rest of the files he cites, and we find that these files do meet the definition of "child pornography."

Having found that 8 of the 216 charged files do not constitute child pornography and therefore are constitutionally protected, we now address the appellant's argument that his general verdict cannot stand. In *Barberi*, our superior court held that a general verdict convicting an appellant of possessing six images of child pornography was constitutional error where the Army Court of Criminal Appeals found four of the images were not child pornography. *Barberi*, 71 M.J. at 132-33. The Court held, "Because we cannot know which prosecution exhibits formed the basis for the members' decision, and their findings may have been based on constitutionally protected images, the general verdict to the possession of child pornography must be set aside." *Id.* at 132.

---

[3] The appellant was found not guilty of specifications alleging he possessed files 174, 175, and 182, files we have found fail to meet the definition of child pornography. However, these files are included in our analysis because the appellant was found guilty of one specification of receiving child pornography, and this specification encompassed all 216 charged files. In addition, for clarity's sake, we note that we found charged file 216 did not meet the definition of child pornography because the evidence does not conclusively demonstrate that the female performing a sex act in the video file was under the age of 18.

Despite the Court's holding in *Barberi*, we reject the appellant's contention that his general verdict must be set aside. As a starting matter, there is no issue with the appellant's conviction on Specification 5 of the Charge, as all of the files contained within that specification constitute child pornography. As for the remaining three specifications of which the appellant was convicted, the bill of particulars for each specification lists some files we have found do not meet the definition of child pornography. We have no reason to doubt that in this military judge-alone case, the military judge properly considered the CPPA's definition of child pornography and the *Dost* factors and issued a proper general verdict that did not convict the appellant for any of the constitutionally-protected images. Nonetheless, based on *Barberi*, we presume error in that we do not know exactly which files formed the basis for the appellant's conviction, and we proceed to the issue of whether the error was harmless.

Our decision in *United States v. Piolunek*, 72 M.J. 830 (A.F. Ct. Crim. App. 2013), *rev'w granted*, __ M.J. __ No. 14-0283/AF (Daily Journal 1 April 2014) controls the outcome on the issue of prejudice. In *Piolunek*, we distinguished *Barberi* from Piolunek's situation, where we found only 3 of the 22 charged images did not constitute child pornography. Applying the test set forth in *Chapman v. California*, 386 U.S. 18, 21-22 (1967), we held that the error in the general verdict was harmless. *Piolunek*, 72 M.J. at 838-39. Specifically, we noted:

> In deciding *Barberi*, we do not believe that our superior court intended to suggest that a conviction must be set aside in every case where even one image offered into evidence as a visual depiction of a minor engaging in sexually explicit conduct was later determined to be constitutionally protected. Such a reading would result in the absurd outcome of vacating a conviction for possessing 10,000 images of minors engaging in sexually explicit conduct because one image did not include a lascivious display of the genital or pubic area.

*Id.* at 838.

Applying the same *Chapman* test of considering the quantitative strength of the evidence, qualitative nature of the evidence, and the circumstances surrounding the offense as they relate to the offense charged, we conclude beyond a reasonable doubt that the eight constitutionally-protected images were unimportant in relation to everything else the military judge considered. Thus, any error in the factfinder's consideration of these 8 images among the 216 admitted in evidence was harmless. We have found less than 4 percent of the charged files constitutionally protected,[4] compared to the 67 percent

---

[4] This calculation considers all 216 charged images, recognizing that the specification alleging the appellant received child pornography was not specific to any particular computer media device, and therefore the specification encompassed all 216 charged images. For Specification 1 of the Charge, we have found 2 of the 44 charged files do

of images found insufficient in *Barberi* and the 14 percent of images found lacking in *Piolunek*.  The images that were not entitled to constitutional protection are also strong evidence of the harmlessness of the protected images, as the remaining images are stark, graphic, and blatant, in most instances depicting adults sexually violating young girls.  Finally, as in *Piolunek*, the circumstances surrounding the receipt and possession of the files strongly support a conclusion that the admission of the eight constitutionally-protected images was harmless beyond a reasonable doubt.  Therefore, we find that consideration of the eight images in question did not materially contribute to a finding of guilt, and that consideration of these images was "unimportant" in relation to everything else the military judge considered on the question of guilt.  *Yates v. Evatt*, 500 U.S. 391, 403 (1991).  The appellant is not entitled to have his convictions set aside despite the general verdicts and the existence of some constitutionally-protected depictions.

### *Introduction of Peer-to-Peer Report*

The appellant finally alleges that the military judge abused his discretion by admitting a "Peer-to-Peer Analysis Report," the probative value of which he asserts was substantially outweighed by its danger of unfair prejudice.  We disagree.

We review a military judge's decision to deny a motion to suppress evidence for an abuse of discretion.  *United States v. Mott*, 72 M.J. 319, 329 (C.A.A.F. 2013) (citations omitted).  "An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citing *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007)).

Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Mil. R. Evid. 403.  Appellate courts typically exercise great restraint in reviewing a military judge's decision to admit or exclude evidence under Mil. R. Evid. 403.  *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).  When a military judge conducts a proper balancing test under this rule, the ruling will not be overturned unless there is a "clear abuse of discretion."  *Id.* (quoting *United States v. Ruppel*, 49 M.J. 247, 250 (C.A.A.F. 1998).

We review the admissibility of uncharged misconduct under Mil. R. Evid. 404(b) using the three-part test articulated in *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989) (citations, ellipses, and internal quotation marks omitted):

---

not meet the definition of child pornography and are therefore constitutionally protected.  For Specification 4 of the Charge, we have found 3 of the 160 charged files do not meet the definition of child pornography and are therefore constitutionally protected.

1. Does the evidence reasonably support a finding by the court members that the appellant committed prior crimes, wrongs or acts?

2. What fact of consequence is made more or less probable by the existence of this evidence?

3. Is the probative value [of the evidence] substantially outweighed by the danger of unfair prejudice?

At trial, the Government introduced Prosecution Exhibit 20, the peer-to-peer analysis report. This report summarized the forensic reviewer's findings with respect to the appellant's activity on peer-to-peer networks from his Hewlett-Packard desktop computer. This report demonstrated that the appellant downloaded or shared files on peer-to-peer networks, and that several of the file names contained terms commonly associated with child pornography. The report did not demonstrate that the appellant necessarily employed these search terms to locate the files. The report also did not reveal where the files were located on the appellant's desktop computer, or whether the actual images were consistent with their file names. The forensic review did not recover any of the actual files; the peer-to-peer analysis report merely demonstrated that at one point the appellant either downloaded or shared files with the names listed in the report.

Trial defense counsel objected to the admission of Prosecution Exhibit 20, arguing the report was not relevant because the file names contained in the report were not part of the charged misconduct. Trial counsel responded that the report was "more in the nature of [Mil. R. Evid.] 404(b) evidence of motive and intent to search for child pornography during the charged time frame."

The military judge overruled trial defense counsel's objection and admitted Prosecution Exhibit 20. He noted the report contained evidence that the appellant possessed, searched for, or obtained files with names indicative of sexually explicit material involving minors. Applying Mil. R. Evid. 403 and 404(b), he recognized the probative value of the report was "limited," but that this limited value was not outweighed by the danger of unfair prejudice or other concerns applicable under the rule. He ruled:

It is clear to the court that these files may have been of images other than what was described in the file name, but there is still probative value in the fact that the files with these file names were contained in peer-to-peer network and therefore, defense counsel's objection is overruled.

We find no abuse of discretion in the military judge's ruling. The military judge applied the appropriate legal tests under Mil. R. Evid. 403 and 404(b), and therefore his

ruling was not influenced by an erroneous view of the law. He appropriately recognized the probative value of the report was somewhat limited, because the report did not reveal the actual depictions contained in the files. Nonetheless, the fact that the appellant either downloaded or shared files with such explicit names indicative of child pornography has some tendency to demonstrate that he committed the charged misconduct. A review of the entire record convinces us the probative value was not substantially outweighed by the danger of unfair prejudice, particularly in this military judge-alone trial, where the military judge is presumed to know the law and weigh the evidence accordingly. *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000) ("A military judge is presumed to know the law and apply it correctly, is presumed capable of filtering out inadmissible evidence, and is presumed not to have relied on such evidence on the question of guilt or innocence.").

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38269